AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Southern District of California

**FILED**

SEP 1 6 2019

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Unknown Make / Model Cellular Phone, with IMEIs<br>359345085343263 and 359345085343271, seized on<br>August 17, 2019 at the Otay Mesa Port of Entry | )<br>)<br>)<br>)<br>)<br>) |

Case No.  **19MJ3981**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-2

located in the _____Southern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 952, 960 | Importation of Controlled Substances |
| 21 U.S.C. § 963 | Conspiracy |

The application is based on these facts:

See attached affidavit, incorporated by reference

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

HSI Special Agent Johnson H. Pham
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _9/16/19 @ 10:30 AM_

_____
*Judge's signature*

City and state:  San Diego, California

Hon. Karen S. Crawford, U.S. Magistrate Judge
*Printed name and title*

## Attachment A-2

### *Item to be Searched*

The item to be searched is as follows:

> Unknown Make or Model Cellular Phone
> IMEI 1 #359345085343263
> IMEI 2 #359345085343271
> ("**Target Device 2**")

**Target Device 2** is currently in the possession of the Department of Homeland Security and is presently stored at a secure evidence storage facility located the Customs and Border Protection, Office of Field Operations, Otay Mesa Cargo West Facility, San Diego, California.

## Attachment B

### *Items to be Seized*

Authorization to search the **Target Devices** described in Attachments A-1 and A-2 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the **Target Devices** for evidence described below. The seizure and search of the **Target Devices** shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the **Target Devices** will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, from June 19, 2019 up to and including August 18, 2019:

        a.    tending to indicate efforts to import methamphetamine or some other federally controlled substance from Mexico into the United States;

        b.    tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine or some other federally controlled substance from Mexico into the United States;

        c.    tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine or some other federally controlled substance from Mexico into the United States;

        d.    tending to identify travel to or presence at locations involved in the importation of methamphetamine or some other federally controlled substance from Mexico into the United States;

        e.    tending to identify the movement of proceeds associated with the trafficking of methamphetamine or some other federally controlled substance that was imported from Mexico into the United States;

        f.    tending to identify the user of, or persons with control over or access to, the **Target Devices**; and/or

1             g.      tending to place in context, identify the creator or recipient of, or

2 establish the time of creation or receipt of communications, records, or data involved in the

3 activities described above,

4 which are evidence of violations of Title 21, United States Code, Sections 952, 960, and 963.

1   **AFFIDAVIT IN SUPPORT OF SEARCH WARRANT**

2   I, Johnson H. Pham, having been duly sworn, do hereby state that the following is

3   true to my knowledge and belief:

4   **INTRODUCTION**

5   1.   I make this affidavit in support of an application for a warrant to search the

6   following electronic devices, as further described in Attachments A-1 and A-2 (the "**Target**

7   **Devices**"), and seize evidence of violations of federal law, namely 21 U.S.C. §§ 952, 960,

8   and 963, as further described in Attachment B:

9   Apple iPhone 6S Cellular Phone
    Model No. A1633
10   IMEI (Unknown)[1]
11   ("**Target Device 1**" as noted in Attachment A-1)

12   Unknown Make or Model Cellular Phone
    IMEI 1 #359345085343263
13   IMEI 2 #359345085343271
14   ("**Target Device 2**" as noted in Attachment A-2)

15   These search warrants support an investigation and prosecution of Denise AGUILAR

16   Alderete, who is presently charged with committing violations of 21 U.S.C. §§ 952 and

17   960.  A factual explanation supporting probable cause follows.

18   2.   Officers with the Department of Homeland Security, United States Customs

19   and Border Protection ("CBP"), seized the **Target Devices** from AGUILAR on August 17,

20   2019, when she was arrested at the Otay Mesa, California, Port of Entry ("POE") for drug

21   smuggling, in violation of 21 U.S.C. §§ 952 and 960.  Specifically, AGUILAR was found

22   in possession of approximately 50.60 kilograms of methamphetamine, and .08 kilograms

23   of procaine hydrochloride, hidden in a compartment under the spare tire of the vehicle that

24

25

26   ──────────────

27   [1] Investigators cannot identify the IMEI for **Target Device 1** without turning on the phone,
    which is currently out of battery life.  However, the documented chain of custody confirms
28   that **Target Device 1** is the noted Apple iPhone, seized on August 17 under the
    circumstances described in this affidavit.

she was driving.[2] The **Target Devices** are currently in the possession of the Department of Homeland Security and is presently stored at a secure evidence storage facility located the Customs and Border Protection, Office of Field Operations, Otay Mesa Cargo West Facility, San Diego, California.

3.      Based on the information below, there is probable cause to believe that searches of the **Target Devices** will produce evidence of the aforementioned crimes, as more particularly described in Attachment B.

4.      Because this affidavit is being submitted for the limited purpose of establishing probable cause to obtain a search warrant, it does not contain all of the information known to investigators about this investigation. It contains only those facts believed to be necessary to establish probable cause. In addition, information contained in this affidavit is based upon reviews of official reports and records, conversations with other investigators experienced in the area of drug investigations, and my personal observations and knowledge. When the contents of documents or statements of others are reported herein, they are reported in substance and in part unless otherwise indicated.

## TRAINING AND EXPERIENCE

5.      I am employed as a Special Agent for the United States Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations (HSI).  I am currently assigned to the office of the Deputy Special Agent in Charge in San Ysidro, California, Global Trade Investigations Group and have been so employed by HSI since October 2009.  I regularly work with other state and federal law enforcement partners including, but not limited to, the San Diego County Sherriff's Department, the San Diego Police Department, and Customs and Border Protection.

6.      I am a graduate of the Criminal Investigator Training Program and Immigration and Customs Enforcement, Special Agent Training Program at the Federal

---

[2] I am aware that procaine hydrochloride is an anesthetic drug, sometimes used in medical applications such as dentistry. I am also aware that it is sometimes added to illicit controlled substances (*i.e.*, used as a "cut"). It does not appear to be a federally controlled substance.

Law Enforcement Training Center. I have received training in identifying various controlled substances. I have conducted investigations involving trafficking controlled substances. I have spoken with other agents with extensive experience in controlled substances investigations. I am assigned to conduct investigations of criminal violations relating to the smuggling and transportation of controlled substances. I have participated in the arrests of several persons for violations of the Controlled Substances Act. I have witnessed interviews with the arrested persons and with their associates. Through these interviews, I have gained a working knowledge and insight into the typical working of controlled substance traffickers and smugglers.

7.     Through the course of my training, investigations and conversations with other law enforcement personnel, I am aware that it is a common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators in order to further their criminal activities. Conspiracies involving narcotics smuggling generate many types of evidence including, but not limited to, evidence such as voicemail messages referring to the arrangements of travel and payment, names, photographs, text messages, emails, instant messages, social networking messages, maps and directions, and phone numbers of co-conspirators.

8.     Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics and human trafficking investigations, I am also aware that:

a.     Drug traffickers will use digital devices like cellular telephones because they are mobile, and they have instant access to telephone calls, text, web, email, and voice messages;

b.     Drug traffickers will use digital devices like cellular telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit;

c. Drug traffickers and their accomplices will use digital devices like cellular telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations;

d. Drug traffickers will use digital devices like cellular telephone to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo;

e. Drug traffickers will use digital devices like cellular telephone to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings;

f. The use of digital devices like cellular telephones by traffickers tends to generate evidence that is stored on the digital devices, including, but not limited to emails, text messages, photographs, audio files, call logs, address book entries, IP addresses, social network data, and location data; and

g. Individuals involved in the illegal possession and acquisition of drug trafficking often utilize digital devices like cellular telephones with photograph and video capabilities to take and send photographs and videos of other members of criminal organizations, drugs, criminal proceeds, and assets purchased with criminal proceeds.

9.      Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular/mobile telephones can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone.

Specifically, I know based upon my training, education, and experience investigating these conspiracies that searches of cellular/mobile telephones yields evidence:

    a. tending to indicate efforts to import methamphetamine or some other federally controlled substances from Mexico into the United States;

    b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine or some other federally controlled substances from Mexico into the United States;

    c. tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine or some other federally controlled substances from Mexico into the United States;

    d. tending to identify travel to or presence at locations involved in the importation of methamphetamine or some other federally controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

    e. tending to identify the user of, or persons with control over or access to, the **Target Devices**; and/or

    f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

10.    Subscriber Identity Module ("SIM") Cards, also known as subscriber identity modules, are smart cards that store data for cellular telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages. Much of the evidence generated by a smuggler's use of a cellular telephone would likely be stored on any SIM Card that has been utilized in connection with that telephone.

11.    Furthermore, based on my training and experience, and conversations with other law enforcement officers who investigate drug smuggling and trafficking, I know

1  that drug conspiracies often require detailed and intricate planning to successfully evade
2  detection. Consequently, drug conspiracies often involve planning and coordination for
3  several months—this planning often occurs through mobile telephones. Additionally,
4  based on my training and experience, and conversations with other law enforcement
5  officers who investigate drug smuggling and trafficking, I know that coconspirators are
6  often unaware when a fellow coconspirator has been arrested and will attempt to
7  communicate with that coconspirator via mobile telephone after his or her arrest to
8  determine the whereabouts of drugs that are being transported.

9                        **FACTS IN SUPPORT OF PROBABLE CAUSE**

10         12.    According to the report of CBP Officer Moreno, on August 17, Officer Moreno
11  and his K-9 Unit were conducting inspections in the pre-primary area of the Otay Mesa
12  POE. At about 12:40 p.m., the K-9 Unit alerted on a red Ford Fiesta with Baja California
13  license plate A15NVP9, which was then in inspection lane 11. Officer Moreno asked the
14  driver to open the trunk, and the K-9 Unit alerted to the floor of the trunk. Officer Moreno
15  lifted a small section of the trunk flooring and saw plastic-wrapped packages. Officer
16  Moreno called for assistance; other CBP Officers came over to assist. The driver was
17  escorted to the security office, and the Ord Fiesta was taken to the secondary lot for further
18  inspection.

19         13.    According to the report of CBP Officer Smith, at about 12:40 p.m., Officer
20  Smith was working in primary lane 10 at the Otay Mesa POE, when he received an alert
21  from Officer Moreno that Officer Moreno's K-9 Unit had alerted on the Ford Fiesta.
22  AGUILAR was the driver and sole occupant of the Ford Fiesta. In response to Officer
23  Smith's questions, AGUILAR gave two negative customs declarations and said that she
24  was driving to Chula Vista to go shopping. AGUILAR also told Officer Smith that she was
25  the owner of the Ford Fiesta. After this exchange, Officer Smith had AGUILAR get out of
26  the Ford Fiesta and placed her in handcuffs. Officer Smith and another CBP Officer escorted
27  her to the security office.

28

14.     According to the report of CBP Officer Lopez, at about 1:00 p.m. on August 17, Officer Lopez screened the Ford Fiesta using the "Z-Portal" X-Ray Machine. Officer Lopez saw anomalies in the area of the trunk floor. Officer Lopez informed CBP Officer Cordero of his observations.

15.     According to the report of CBP Officer Cordero, at about 12:50 p.m. on August 17, Officer Cordero was assigned to conduct an inspection of the Ford Fiesta. In the trunk of the car, Officer Cordero lifted the lid covering the spare tire and saw a non-factory compartment under the spare tire. (In other words, Officer Cordero discovered a false-bottom compartment in the space under the spare tire.) Officer Cordero removed the spare tire and the covering of the non-factory compartment and found 107 plastic-wrapped packages.

16.     At about 1:30 p.m., Officer Cordero removed one of the packages and tested its contents, which tested positive for methamphetamine. Officer Cordero also saw that one of the packages had a different shape; the contents of this package tested positive for procaine hydrochloride. In total, the 106 packages of methamphetamine weighed 50.60 kilograms, and the package of procaine hydrochloride weighed .08 kilograms

17.     Officer Cordero placed AGUILAR under arrest for a violation of 21 U.S.C. §§ 952 and 960 and seized the Ford Fiesta, the methamphetamine and procaine hydrochloride, and the **Target Devices**. (Officer Cordero's report does not specify if he seized the **Target Devices** directly from AGUILAR, but I know from my training and experience that when a person is referred to the security office at the POE, their personal effects are taken and held by CBP; if the person is arrested, the effects are seized. I further noted that AGUILAR was the driver and sole occupant of the Ford Fiesta when she entered the United States.)

18.     I responded to the Otay Mesa POE and interviewed AGUILAR. I advised AGUILAR of her *Miranda* rights, which she waived. AGUILAR told me that her parents were having financial difficulty, and that a friend named "Martin" had said she could smuggle to make money. AGUILAR said that she was to be paid $2,000 to smuggle $50,000

1  into the United States. She had given the Ford Fiesta to a person known to her as "El Pollo"
2  for about three hours, to be prepared for the smuggling. After AGUILAR got the Ford Fiesta
3  back from El Pollo, she looked for the contraband but could not find it. If she had succeeded
4  in entering the United States, she was to drive to the rear parking lot at the Plaza Las
5  Americas, wait on a bench there, and give the keys to the car to an unknown person who
6  would then take the car.

7      19.    I note that AGUILAR also said that **Target Device 2** belonged to her sister.
8  Though AGUILAR disclaimed ownership of this phone, she was in possession of it when
9  she entered the United States at the Otay Mesa POE, driving a car that was apparently given
10  to her for the purpose of cross-border smuggling.

11      20.    Given the facts surrounding the arrest of AGUILAR, and based upon my
12  experience and training, as well as consultation with other law enforcement officers
13  experienced in drug smuggling investigations, I submit that there is probable cause to
14  believe that information relevant to the smuggling activity of AGUILAR will be found in
15  the **Target Devices**. Such evidence, which could be in the form of communications,
16  records, data (including but not limited to emails, text messages, other social messaging
17  applications), photographs, audio files, videos, or location data:

18          a. tending to indicate efforts to import methamphetamine or some other federally
19             controlled substance from Mexico into the United States;

20          b. tending to identify accounts, facilities, storage devices, and/or  services–such
21             as email addresses, IP addresses, and phone numbers–used to facilitate the
22             importation of methamphetamine or some other federally controlled
23             substance from Mexico into the United States;

24          c. tending to identify co-conspirators, criminal associates, or others involved in
25             importation of methamphetamine or some other federally controlled
26             substance from Mexico into the United States;

27
28

d. tending to identify travel to or presence at locations involved in the importation of methamphetamine or some other federally controlled substance from Mexico into the United States;

e. tending to identify the movement of proceeds associated with the trafficking of methamphetamine or some other federally controlled substance that was imported from Mexico into the United States;

f. tending to identify the user of, or persons with control over or access to, the **Target Devices**; and/or

g. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

21.     Accordingly, based upon my experience and training, consultation with other law enforcement officers experienced in drug trafficking investigations, and all the facts and opinions set forth in this affidavit, there is probable cause to believe that information relevant to the drug smuggling and trafficking activities of AGUILAR, such as telephone numbers, made and received calls, contact names, electronic mail (e-mail) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the **Target Devices**.  For the reasons set forth above, I request permission to search the **Target Devices** for items listed in Attachment B for the time period from June 19, 2019, up to and including August 18, 2019, which was the day following ALONZO's arrest.

## **METHODOLOGY**

22.     It is not possible to determine, merely by knowing a cellular telephone's make, model and serial number, the nature and types of services to which the devices are subscribed and the nature of the data stored on the devices. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary

word processing. An increasing number of cellular service providers now allow for their
subscribers to access their devices over the internet and remotely destroy all of the data
contained on the devices. For that reason, the devices may only be powered in a secure
environment or, if possible, started in "flight mode" which disables access to the network.
Unlike typical computers, many cellular telephones and tablets do not have hard drives or
hard-drive equivalents and store information in volatile memory within the devices or in
memory cards inserted into the devices. Current technology provides some solutions for
acquiring some of the data stored in some cellular telephone models, and some tablets, using
forensic hardware and software. Even if some of the stored information on the devices may
be acquired forensically, not all of the data subject to seizure may be so acquired.  For
devices that are not subject to forensic data acquisition or that have potentially relevant data
stored that is not subject to such acquisition, the examiner must inspect the device manually
and record the process and the results using digital photography. This process is time and
labor intensive and may take weeks or longer.

23.     Following the issuance of this warrant, I will collect the **Target Devices** and
subject it to analysis. All forensic analysis of the data contained within the **Target Devices**
and any associated memory cards will employ search protocols directed exclusively to the
identification and extraction of data within the scope of this warrant.

24.     Based on the foregoing, identifying and extracting data subject to seizure
pursuant to these warrants may require a range of data analysis techniques, including
manual review, and, consequently, may take weeks or months. The personnel conducting
the identification and extraction of data will complete the analysis within 90 days, absent
further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

25.     At the time of AGUILAR's arrest, investigators obtained a forensic download
of **Target Device 1**. I have not relied on any of the information obtained from that download
in this affidavit. Going forward, the Government will not rely on the information obtained

from that download for any reason, but will rely only on searches of the **Target Devices** that are authorized by the requested warrants.

## CONCLUSION

26.      Based on all of the facts and circumstances described above, I believe probable cause exists to conclude that AGUILAR used the **Target Devices** to facilitate violations of Title 21, United States Code, Sections 952, 960, and 963.

27.      Because the **Target Devices** were promptly seized following the arrest of AGUILAR at the Otay Mesa POE, there is probable cause to believe that evidence of the smuggling offense committed by her continues to exist on the **Target Devices**.  As stated above, I believe that the date range for this search is from June 19, 2019, up to and including August 18, 2019.

28.      WHEREFORE, I request that the court issue a warrant authorizing HSI Special Agents and/or other federal and state law enforcement officers specially trained in digital evidence recovery, to search the **Target Devices**, as described in Attachments A-1 and A-2, and seize the items listed in Attachment B, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
JOHNSON H. PHAM
Homeland Security Investigations Special Agent
Department of Homeland Security

Subscribed and sworn to before me on
this ____ day of September, 2019.

THE HON. KAREN S. CRAWFORD
United States Magistrate Judge

*Affidavit in Support of Search Warrant*          11